UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Christopher Polansky

    v.                                        Civil No. 16-cv-256-LM

New Hampshire Department
of Corrections et al.[1]


## REPORT AND RECOMMENDATION

    Christopher Polansky, a former Northern New Hampshire Correctional Facility ("NCF") inmate currently on medical parole at a Texas long-term care facility, brings this suit asserting violations of his federal constitutional rights and torts under state law, perpetrated while he was an NCF inmate.  Before the court are four motions to amend the complaint (Doc. Nos. 8, 9, 19, 20), Polansky's original complaint (Doc. No. 1), and addenda to the complaint (Doc. Nos. 2-5, 10-14).[2]  Those filings are

---

[1]In addition to the New Hampshire Department of Corrections ("DOC") and DOC Commissioner William Wrenn, plaintiff names the following defendants:  Northern New Hampshire Correctional Facility ("NCF") Warden Michelle Goings; Jeff Fetter, M.D.; and Marvin Kendall, M.D.  Exhibits filed with the complaint and complaint addenda indicate an intent to name NCF Nurse Practitioner Judy Baker and NCF Nurse Ryan Landry as defendants.

[2]Document Nos. 10-14 were originally docketed as motions for expedited relief and for preliminary injunctive relief.  Those motions were denied.  See July 27, 2016, Order (Doc. No. 22).  The court in this Report and Recommendation construes the factual allegations set forth in those filings to be addenda to

before the court for preliminary review, to determine if any claims asserted by Polansky may proceed in this case.

## Background

The following factual allegations are stated in the Complaint (Doc. No. 1), the Complaint Addenda (Doc. Nos. 2-5, 10-14), and/or in the four pending motions to amend (Doc. Nos. 8, 9, 19, 20).  At all relevant times, Polansky was an inmate with paraplegia at NCF who could not stand or walk.  Polansky was transferred to NCF in April/May 2015, after the revocation of his medical parole to the Glencliff Home, a long-term care facility in New Hampshire.  In June/July 2016, Polansky was medically paroled to a long-term care facility in Texas, after the DOC required plaintiff and plaintiff's brother (plaintiff's guardian of the person) to sign an agreement stating that they would reimburse the state for costs associated with returning plaintiff to New Hampshire if he were to violate conditions of his medical parole.

## I.   Pressure Sores and Hospitalizations

Polansky used a wheelchair and a shower chair at NCF for bathing, and he required assistance with other activities of

---

the complaint.

daily living.  Polansky alleges that the wheelchair did not have proper leg extensions, and that the shower chair did not have a proper seat pillow, which contributed to the formation of sores on his buttocks, legs, and feet, beginning in May 2015.

Polansky asserts that defendants and the NCF medical staff were aware of these sores.  Polansky addressed numerous inmate request slips to Nurse Ryan Landry and Nurse Practitioner Judy Baker from May/June 2015 through August 2015, asking for: a referral to outside providers for treatment of open wounds on his "backside," a new pressure-relieving mattress, shower shoes to protect his toes from further injury, physical therapy for his legs, a new cushion for the shower chair, and/or leg extensions for his wheelchair, which he asserted that he needed to avoid further injury to his buttocks and toes.

Polansky alleges that defendants did not adequately monitor or treat plaintiff's sores.  In September/October 2015, Polansky sent numerous inmate request slips to NCF health care providers and administrators, including Nurse Ryan Landry, asking for a referral to a hospital or wound care clinic to treat his wounds, which he said had begun to smell.  Polansky's requests in that regard did not result in the referrals in the time and manner he requested.

Polansky further alleges that defendants did not monitor plaintiff's temperature to detect signs of a worsening infection.  Plaintiff has alleged that he was admitted to the Androscoggin Valley Hospital ("AVH") with a high fever and severe pain on October 16, 2015, due to five ulcers on his buttocks and lower extremities.  Plaintiff further alleges that he was admitted to AVH again on February 16, 2016, days after he began to have fever-induced chills, with a high fever and four infected ulcers on his buttocks and lower extremities.  Polansky alleges that, by February 16, 2016, the infection had spread to his hip bone, causing pain and osteomyelitis.

On March 24, 2016, Polansky grieved issues relating to his sores, his claims of neglect, and his requests for a pressure-relieving mattress and for a referral to a specialist.  The copy of Warden Goings's March 29, 2016 response to that grievance in the court's record is not completely legible, but appears to refer Polansky to Paula Mattis, Director of Medical and Forensic Services.  See Doc. No. 5-2.

## II.  **Urinary Tract Infections**

Plaintiff alleges that he developed urinary tract infections at NCF in 2015 and 2016.  Plaintiff further alleges that defendants were aware of his urinary tract infections and

4

did not treat them adequately.

### III. **Hepatitis C**

Plaintiff asserts that DOC Chief Medical Officer Dr. Jeffrey Fetter and NCF health care provider Dr. Marvin Kendell, were both aware that plaintiff had tested positive for Hepatitis C, but did not prescribe medication to treat that condition, despite plaintiff's request for such treatment.  Exhibits filed with the pleadings in this case include Dr. Fetter's March 3, 2016 response to a February 10, 2016 inmate request slip from Polansky relating to Hepatitis C.  In that response, Dr. Fetter states that Hepatitis C is monitored and treated on a case-by-case basis, and that Polansky's blood screening scheduled for April 2016 would inform the decision regarding how to proceed in Polansky's case.  On May 9, 2016, Dr. Fetter responded to a follow-up inmate request slip from Polansky by stating that an appointment would be arranged with a health care provider to review the result of the April 2016 blood tests.

### Claims

In the original complaint and in the complaint addenda (Doc. Nos. 1-5, 10-14), plaintiff asserts the following claims in this action, relating to events occurring while he was an

inmate at NCF from April/May 2015 through June 2016[3]:

1.   From April/May 2015 to February 2016, NCF Nurse
Practitioner Judy Baker and NCF Nurse Ryan Landry violated
plaintiff's Eighth Amendment right to adequate medical
care, in that, knowing that plaintiff was at a substantial
risk of developing pressure sores and related infections,
and with deliberate indifference to a substantial risk of
serious harm to Polansky, they did not adequately treat and
monitor plaintiff's condition, thereby:

> A.   Causing plaintiff to develop numerous
> pressure sores on his buttocks and lower extremities
> in May 2015;

> B.   Causing those sores to become severely
> infected, precipitating his admission to AVH on
> October 16, 2015; and

> C.   Causing further infection of sores on
> plaintiff's buttocks and lower extremities, leading to
> the spread of the infection to plaintiff's hip bone
> and osteomyelitis, precipitating plaintiff's admission
> to AVH on February 16, 2016.

2.   Nurse Practitioner Judy Baker and Nurse Ryan Landry
are liable for medical malpractice under New Hampshire law
for failing to provide reasonable and proper medical care
in accordance with the applicable standards of care, which
directly and proximately caused:

---

[3]Plaintiff has attached exhibits dating from March 2013
through October 2013, when he was an inmate at the New Hampshire
State Prison, before he was medically paroled to the Glencliff
Home.  To the extent plaintiff seeks to add claims to this case
relating to the care he received prior to his transfer to the
Glencliff Home, plaintiff's claims arise from the same case or
controversy adjudicated in Polansky v. DOC Comm'r, No. 13-cv-
00458-JL (D.N.H.), and are subject to preclusion as res
judicata.  Accordingly, this court construes the claims in this
action to be limited to claims arising while plaintiff was an
inmate at NCF from April/May 2015 through June 2016.

      A.   Numerous bed sores to develop on plaintiff's buttocks and lower extremities in May 2015;

      B.   A severe infection of those bed sores to develop, causing plaintiff to suffer severe pain and a high fever, precipitating his admission to AVH on October 16, 2015; and

      C.   Further infection of sores on plaintiff's buttocks and lower extremities which spread to his hip bone, resulting in osteomyelitis, severe pain, a high fever, and other symptoms, precipitating plaintiff's admission to AVH on February 16, 2016.

3.   Defendants Judy Baker and Ryan Landry violated plaintiff's Eighth Amendment right to adequate medical care by failing to treat plaintiff's urinary tract infections ("UTIs") in 2015/2016, with deliberate indifference to a substantial risk of serious harm to plaintiff.

4.   Defendant corrections officials violated plaintiff's rights under Title II of the Americans with Disabilities Act ("ADA") in 2015/2016, by discriminating against plaintiff in the denial of recreation opportunities, medical and nursing care adequate to avoid and treat pressure sores and pain, physical therapy, referrals for specialty care, and durable medical equipment, including a new mattress, a new shower seat cushion, and wheelchair leg extenders, because of plaintiff's disabilities of paraplegia and diagnosed mental health conditions.

5.   Defendants violated plaintiff's rights under Title II of the ADA in 2015/2016, by discriminating against plaintiff in the imposition of a cost-reimbursement condition on his medical parole, based on plaintiff's disabilities.

6.   Defendants Jeff Fetter, M.D., and Marvin Kendall, M.D., violated plaintiff's Eighth Amendment rights to adequate medical care by refusing plaintiff's request for a particular medication to treat plaintiff's Hepatitis C in 2015/2016.

**Discussion**

I.   **Preliminary Review**

    A.   Preliminary Review Standard

Because Polansky is appearing pro se, the court construes his pleadings liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007).  The court may dismiss Polansky's complaint, or any part of or amendment to the complaint, if it "fails to state a claim on which relief may be granted."  28 U.S.C. §§ 1915(e)(2), 1915A(b)(1); LR 4.3(d)(1)(A).  To determine if the pleading states a claim, the court first disregards plaintiff's legal conclusions and then considers whether the factual content in the pleading and inferences reasonably drawn therefrom, taken as true, state a claim to relief.  Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

    B.   Claims 1-3, Relating to Wound Care and UTIs

        1.   Claims against Landry and Baker

The factual allegations in the pleadings are sufficient to survive preliminary review, with respect to Claims 1-3.  Because the Eleventh Amendment bars plaintiff from proceeding in this action on those claims for damages against defendants in their official capacity, or their state agency employer, the district

8

judge should dismiss such claims for damages against the state.
This court in the Order issued this date has directed service of
Claims 1-3 for damages on defendants Ryan Landry and Judy Baker
in their individual capacities.

>    2.   Supervisors

Supervisory prison officials are not liable under § 1983
for the acts of their subordinates, based solely on their
supervisory authority over, or even awareness of, those acts.
See Soto-Torres v. Fraticelli, 654 F.3d 153, 159 (1st Cir.
2011); see also Iqbal, 556 U.S. at 676.  The pleadings do not
allege facts showing that the NCF Warden, the DOC Commissioner,
or any prison official with supervisory authority over Baker or
Landry engaged in any acts that could give rise to liability
under § 1983, for matters asserted in Claims 1-3.  Accordingly,
the district judge should dismiss those claims.

> C.   ADA Title II Claims

>    1.   Care & Durable Medical Equipment (Claim 4)

In Claim 4, plaintiff seeks relief under the ADA for
defendants' alleged failure to provide him with proper medical
and nursing care for his wounds and pain, specialty referrals,
physical therapy, durable medical equipment, and recreational
opportunities.  To state a claim of a violation of Title II,

based on the denial of adequate medical care, Polansky must plead facts to show, among other things, that he was denied such care, "by reason of his disability." Kiman v. N.H. Dep't of Corr., 451 F.3d 274, 283 (1st Cir. 2006). A plaintiff with a disability asserting a denial of medical care as the basis of an ADA Title II claim may do so by alleging that "defendants' actions regarding his diagnosis, medical consultations, physical therapy, or medical dosages were so unreasonable as to demonstrate that they were discriminating against him because of his disability." Id. at 285.

The allegations regarding delays in or restrictions on plaintiff's receipt of a new mattress, medical and nursing services, a new shower seat cushion, wheelchair leg extenders, physical therapy, and recreation opportunities are sufficient, however, to survive preliminary review of an ADA Title II claim for damages, arising out of claims that defendants' actions with respect to those issues was so unreasonable to give rise to an inference of disability discrimination. Accordingly, in a separate Order, the court has directed service of plaintiff's ADA Title II claim for damages (Claim 4), arising from delays in or the denial of medical and nursing care, therapies, recreation, and durable medical equipment, asserted against DOC

10

Commissioner Wrenn, in his official capacity.

To the extent plaintiff seeks injunctive relief on Claim 4 under the ADA, that claim should be dismissed.  Plaintiff is no longer incarcerated at NCF, and his parole to a facility in Texas has mooted his claims for injunctive relief relating to the conditions of his confinement and medical care at NCF. Furthermore, because the ADA does not provide for individual capacity lawsuits against state officers, see Barnes v. Young, 565 F. App'x 272, 273 (4th Cir. 2014), the district judge should dismiss Polansky's individual capacity ADA claims.

The court notes that, to decide whether a plaintiff can sue state officials in their official capacity for damages under the ADA, the court must determine "'on a claim-by-claim basis, (1) which aspects of the state's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.'" Toledo v. Sanchez, 454 F.3d 24, 31 (1st Cir. 2006).  This court leaves that inquiry for a later stage in this proceeding, after defendants have appeared.

2.   <u>ADA Claim as to Hepatitis C Medication</u>

To the extent plaintiff seeks relief under the ADA for denial of treatment of his Hepatitis C, the complaint fails to demonstrate that delays in treatment of that condition were so unreasonable as to give rise to an inference of disability discrimination.  The exhibits attached to the complaint, regarding the timing of routine blood screenings and case-specific decisions as to plaintiff's condition belie his legal conclusion that the alleged denial of medication for his condition manifested disability discrimination.  Accordingly, the district judge should dismiss any ADA Title II claim in this action, arising from allegations relating to the denial of Hepatitis C medication.

3.   <u>Restriction on Medical Parole (Claim 5)</u>

The pleadings relating to the cost-reimbursement condition in plaintiff's medical parole to Texas, when taken as true with all reasonable inferences construed in plaintiff's favor, do not state a claim that that condition was imposed on plaintiff by reason of his disability.  Accordingly, the district judge should dismiss Claim 5, relating to the cost reimbursement condition on plaintiff's medical parole.

    D.    Eighth Amendment and Hepatitis C Medication (Claim 6)

     "[T]o prove an Eighth Amendment violation, a prisoner must

satisfy both of two prongs: (1) an objective prong that requires

proof of a serious medical need, and (2) a subjective prong that

mandates a showing of prison administrators' deliberate

indifference to that need."  Kosilek v. Spencer, 774 F.3d 63, 82

(1st Cir. 2014), cert. denied, 135 S. Ct. 2059 (2015).

"'Medical malpractice does not become a constitutional violation

merely because the victim is a prisoner.'"  Id. at 83 (citation

omitted).  Moreover, deliberate indifference is not demonstrated

where an incarcerated plaintiff merely disputes the choice of a

certain course of treatment, but does not allege a complete lack

of treatment.  See id. at 92.  Here, plaintiff bases his claim

on the failure of providers to prescribe a medication that

plaintiff had heard about, to cure his Hepatitis C.  Plaintiff's

unmet request for a specific medication does not give rise to a

claim that defendants were deliberately indifferent to a serious

medical need.  Accordingly, Claim 6 should be dismissed.

**II.  Motions to Amend (Doc. Nos. 8, 9, 19, and 20)**

     A.    Standard

     Plaintiff filed a series of four motions (Doc. Nos. 8, 9,

19, 20), which this court construes as motions to amend the

                                  13

original complaint (Doc. No. 1).  In general, under Fed. R. Civ.

P. 15(a), leave to amend is to be "freely given."  Leave to

amend may be denied, however, if the proposed complaint

amendment would be futile.  See Todisco v. Verizon Commc'ns,

Inc., 497 F.3d 95, 98 (1st Cir. 2007); Resolution Tr. Corp. v.

Gold, 30 F.3d 251, 253 (1st Cir. 1994).  To make an assessment

as to the futility of a proposed amendment, this court applies

the standard for preliminary review set forth above.

    B.   Motion to Add Laaman Claims (Doc. No. 9)

    Document No. 9 seeks to add claims to this action asserting

a violation of specific provisions of the Lamaan Consent Decree,

relating to health care services provided to DOC inmates.  In

particular, plaintiff seeks to add claims alleging violations of

Chapter VII, pages 14-19, which plaintiff describes as requiring

prison officials: to provide adequate medical care to inmates;

to have a physician conduct a comprehensive medical examination

of each inmate, which will include a notation of referrals or

recommended treatment and prescriptions for necessary treatment

or referrals; to provide for employment of sufficient numbers of

physicians to provide competent medical care to inmates; to

provide for a chief of medical services who shall report to the

warden when the chief considers that an inmates health has been

14

adversely affected by conditions of confinement; and to provide

for regulations detailing the operations and procedures of the

New Hampshire State Prison relating to medical services.

The Laaman Consent Decree was originally issued in 1978 and

modified in 1990 in Laaman v. Helgemoe, Civ. No. 75-cv-258

(D.N.H. filed Aug. 29, 1975), a class action lawsuit filed in

this court challenging conditions of confinement at the New

Hampshire State Prison.  On July 6, 2001, the court approved a

settlement agreement and stipulation of dismissal in Laaman.

See id. (D.N.H. July 6, 2001) (ECF No. 523).  The July 6, 2001

Order terminated federal court jurisdiction over the matter, and

provided that the 1990 consent decree, as modified by the

settlement agreement, would constitute a final settlement

agreement that would be enforceable in the state courts of New

Hampshire.  Id.  This court lacks federal question jurisdiction

over Polansky's claims based on alleged violations of the Laaman

Consent Decree.  Cf. Dupont v. Dubois, 99 F.3d 1128, 1996 WL

649340, at *1, 1996 U.S. App. LEXIS 29142, at *3 (1st Cir. 1996)

(unpublished table decision) (order seeking to enforce federal

or state court consent decree is unavailable in action under 42

U.S.C. § 1983).

The court lacks diversity jurisdiction over the Laaman

claims, as diversity jurisdiction is assessed at the time an action is filed.  Plaintiff resided at NCF in New Hampshire both when he filed this case, and when he filed Document No. 9, seeking to amend the complaint to add Laaman claims.

Moreover, even assuming that this court could exercise subject matter jurisdiction over Laaman settlement agreement claims, there is an additional reason not to grant the motion to add those claims to this case.  None of the defendants here were signatories to the settlement agreement in their individual capacities, and plaintiff has not pleaded any facts suggesting that the state waived Eleventh Amendment immunity with respect to claims for damages against defendants in their official capacities, relating to alleged violations of the Laaman settlement agreement.  Cf. Marisol A. v. Giuliani, 157 F. Supp. 2d 303, 314 (S.D.N.Y. 2001) (state's waiver of Eleventh Amendment immunity in settlement agreement "will not be found absent unequivocal, express language of waiver").  Accord Vaquería Tres Monjitas v. Pagan, 748 F.3d 21, 27 (1st Cir. 2014).  The motion to add Laaman claims to this action (Doc. No. 9) should be denied as futile, without prejudice to plaintiff's ability to assert such claims in state court.

C.     Remaining Motions to Amend (Doc. Nos. 8, 19, 20)

Document No. 8 asserts that DOC Commissioner William Wrenn required plaintiff and his guardian of the person, Richard Polansky, to sign an agreement, in which they promised to pay the cost of returning plaintiff to New Hampshire from Texas, if plaintiff were to violate the conditions of his parole. Plaintiff moved to add a claim to this action voiding that requirement.

As explained above, the ADA Title II claim relating to the cost reimbursement agreement, set forth in a complaint addendum (Doc. No. 14) does not state a claim.  In Document No. 8, Polansky has not alleged any additional facts stating a claim for relief relating to that agreement.  Accordingly, the motion seeking to add the issue to this case should be denied as futile.

Document No. 19, entitled "Motion for Dental Care," and Document No. 20, entitled "Motion for Medical Care," are filings consisting entirely of legal arguments, broad statements of legal principles, and case citations.  There are no factual allegations in those filings.  Stripped of legal conclusions, those filings fail to state any claim upon which relief can be granted.  Accordingly, the district judge should deny the

17

proposed amendments to the complaint in those filings as futile.

**Conclusion**

For the reasons set forth above, the district judge should dismiss: Claims 1-3 to the extent those claims are asserted against defendants in their official capacity; Claim 4 to the extent it seeks injunctive relief or damages against any defendant in his individual capacity; and Claims 5 and 6.  The district judge should deny the motions to amend (Doc. Nos. 8, 9, 19, 20).  Further, the district judge should drop all of the named defendants from this action, except William Wrenn (in his official capacity), Judy Baker, and Ryan Landry.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Garayalde-Rijos v. Mun. of Carolina, 747 F.3d 15, 21-22 (1st Cir. 2014).


_____
Andrea K. Johnstone
United States Magistrate Judge

November 28, 2016
cc:  Christopher Polansky, pro se